[No. 67488-4. En Banc.]

Argued September 14, 1999. Decided February 3, 2000.

The City of Bellevue, *Respondent*, v. Jon M. Lorang, *Petitioner.*

20

*Michael Lawrence Mittlestat* and *Richard Robert Tassano*, for petitioner.

*Richard L. Andrews, City Attorney*, and *Jerome Roache, Assistant*, for respondent.

*Derek William Loeser* on behalf of American Civil Liberties Union of Washington, amicus curiae.

JOHNSON, J. — The question presented is whether the City of Bellevue's telephone harassment ordinance (Ordinance) is unconstitutional insofar as it forbids speech that is "profane" or "[w]ithout purpose of legitimate communication." BELLEVUE CITY CODE (BCC) 10A.84.090(A)(1), (4). The Court of Appeals held the Ordinance was constitutional and affirmed Lorang's conviction. We reverse.

## FACTS[1]

In 1994, City of Bellevue resident Jon Lorang was living

---

[1]The facts are not important to a facial challenge of the constitutionality of a statute and are provided merely as background.

in an apartment complex managed by the King County Housing Authority (Housing Authority). He was somehow assigned two apartments and was instructed to vacate one of them and move to the other.

On August 5, 1994, Edward Win, a Housing Authority employee and resident manager of Lorang's apartment building, found four messages on his telephone answering machine from Lorang. Win testified, "I remember I heard [Lorang] referring to Miss Jones as a bitch and a twat. Charles Biggers as Charley boy and him coming over with the sheriff and bringing nine bros." Clerk's Papers at 217. He "referred to the Housing Authority as King of Kings . . . ." Clerk's Papers at 227. Jones and Biggers are both Housing Authority employees. Win also stated Lorang was calling to complain, and not calling with a purpose. Win testified, Lorang "told me several times that the Housing Authority was harassing him and was vindictive toward him." Clerk's Papers at 220.

Lorang was convicted of telephone harassment against the Housing Authority under BCC 10A.84.090.[2] The Ordinance at issue states:

Telephone harassment shall be as follows:

A. Every person who, with intent to disturb, embarrass, harass, intimidate, threaten or torment any other person, shall make a telephone call to such other person:

1. Using any lewd, lascivious, *profane*, indecent or obscene words or language, or suggesting any lewd or lascivious act; or

2. Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or

3. Threatening to inflict injury on the person or property of the person called or any member of his family; or

4. *Without purpose of legitimate communication.*

---

[2]Lorang was convicted on two separate counts of telephone harassment for calls made on August 4 and 5, 1994, respectively. The count based on the August 4, 1994 telephone call was dismissed on appeal to superior court and is not before us. Only the August 5, 1994 conviction is before us.

B. The foregoing offense shall be deemed committed either at the place where the telephone call or calls were made or at the place where the telephone call or calls were received.

C. Telephone harassment is a misdemeanor.

BCC 10A.84.090 (emphasis added).

Although the Court of Appeals found the Ordinance potentially unconstitutional, it affirmed Lorang's conviction in a published decision and ordered future jury instructions to include a secular definition of "profane." *City of Bellevue v. Lorang*, 92 Wn. App. 186, 196, 963 P.2d 198 (1998). Lorang sought review of that decision, which we granted.

## ISSUES[3]

(1) Is an ordinance that restricts "profane" speech without defining it secularly constitutionally suspect?

(2) Is an ordinance that restricts "profane" speech without defining it secularly overbroad?

(3) Is an ordinance that restricts telephone calls made "without purpose of legitimate communication" unconstitutional for vagueness?

(4) Was any error harmless?

## ANALYSIS
### Content Restrictions on Speech

█ The issue here centers on the Ordinance's use of the term "profane." While antiharassment ordinances are constitutional, *see, e.g., City of Seattle v. Huff*, 111 Wn.2d 923, 767 P.2d 572 (1989), they must be carefully drawn not to burden protected speech. *See, e.g., R.A.V. v. City of St. Paul*,

---

[3]While the briefs mention WASH. CONST. art. I § 5, the parties have not briefed whether the analysis under the state constitution would be any different from analysis under the federal constitution, and no *Gunwall* analysis was done. *See State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4TH 517 (1986). This case does not provide a vehicle to analyze whether the state constitution provides greater protection. *See, e.g., World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 390, 816 P.2d 18 (1991).

505 U.S. 377, 387, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992) ("In our view, the First Amendment imposes . . . a 'content discrimination' limitation upon a State's prohibition of proscribable speech."). "A statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech." *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 112 S. Ct. 501, 116 L. Ed. 2d 476 (1991).

Lorang contends that "profane" is not a content neutral term, and the City of Bellevue has, therefore, placed an impermissible content based burden on speech. Determining the meaning of "profane" resolves whether the Ordinance burdens protected speech.

■ "Profane" is not defined in the Ordinance. Unless contrary legislative intent is indicated, words are given their ordinary, dictionary meaning. *See State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992). *Webster's* defines "profane" as:

> to violate or treat with abuse, irreverence, obloquy, or contempt (something sacred) : treat as not sacred : DESECRATE, POLLUTE . . . unconcerned with that which is religious or with the purpose of religion : not devoted to the sacred and the holy . . . not holy because unconsecrated, impure, or defiled . . . .

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1810 (1986). *Black's Law Dictionary* defines "profane" as: [i]rreverence toward God or holy things. Writing, speaking, or acting, in manifest or implied contempt of sacred things." BLACK'S LAW DICTIONARY 1210 (6th ed. 1990). *The Oxford English Dictionary* defines "profane" as:

> **1.** Not pertaining or devoted to what is sacred or biblical . . . ; unconsecrated, secular, lay, common ; civil, as distinguished from ecclesiastical.
>
> . . . .
>
> **2.** Applied to persons or things regarded as unholy or as desecrating what is holy or sacred : unhallowed ; ritually un-

clean or polluted ; esp. said of the rites of an alien religion : heathen, pagan.

. . . .

**3.** Characterized by disregard or contempt of sacred things, esp., in later use, by the taking of God's name in vain ; irreverent, blasphemous, ribald ; impious, irreligious, wicked.

3 THE OXFORD ENGLISH DICTIONARY 1425 (1933).

■ The word "profane" is also defined as "to indulge in profanity." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1810 (1986). The Court of Appeals found that "profane (meaning vulgar or coarse) language easily occupies a place equivalent to the other . . . categories of speech entitled to minimal protection because of their low value in the exchange of ideas." *Lorang*, 92 Wn. App. at 195. The Court of Appeals concluded, " 'words are known by the company they keep,' "[4] and the other words contained in the Ordinance (lewd, lascivious, indecent, and obscene) do not concern themselves with blasphemy. After determining that "profane" was a secular term, the Court of Appeals concluded the Ordinance did not discriminate based on viewpoint. *Lorang*, 92 Wn. App. at 195. We disagree with this approach. A reading of "profane" in this way renders it redundant with "indecent" and "obscene," triggering another principle of statutory construction: "statutes should be construed so that all of the language used is given effect, and no part is rendered meaningless or superfluous." *State v. Bash*, 130 Wn.2d 594, 602, 925 P.2d 978 (1996) (citing *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)).

■ ■ We find the general dictionary definition of "profane" has a religious denotation and, thus, generally refers to speech that is accorded strong protection under the United States Constitution. *See also State v. Alexander*, 76 Wn. App. 830, 843-44, 888 P.2d 175 (1995) (" 'Profane'

---

[4]*Lorang*, 92 Wn. App. at 195 (quoting *State v. Kipf*, 234 Neb. 227, 234, 450 N.W.2d 397, 404 (1990)).

has another, common connotation, however. It is frequently used to describe language '[m]anifesting irreverence or disrespect toward the Deity or sacred things.' ") (Baker, A.C.J., concurring) (quoting FUNK & WAGNALL'S STANDARD DESK DICTIONARY (1966)). We find that forbidding "profane" speech implicates the First Amendment to the United States Constitution and, therefore, analyze the Ordinance to test whether it serves a compelling state interest and is not overbroad, and whether the City of Bellevue can "achieve its ends in a less restrictive manner . . . ." *State v. Oyen*, 78 Wn.2d 909, 919, 480 P.2d 766 (1971), *vacated on other grounds*, 408 U.S. 933, 92 S. Ct. 2846, 33 L. Ed. 2d 745 (1972).

The fact this Ordinance burdens protected speech does not end the analysis. We must next determine whether the burden is constitutionally permissible. The First Amendment does not bar the State from outlawing speech-based harassment. *See Huff*, 111 Wn.2d at 929. The question is whether this Ordinance does so in a way that is unconstitutionally overbroad.

### Overbreadth

"A statute is overbroad if its prohibitions extend beyond proper bounds and violate the First Amendment's protection of free speech." *City of Seattle v. Eze*, 111 Wn.2d 22, 31, 759 P.2d 366, 78 A.L.R.4TH 1115 (1988) (citing *Federal Way Family Physicians, Inc. v. Tacoma Stands Up For Life*, 106 Wn.2d 261, 267-68, 721 P.2d 946 (1986)). An overbreadth challenge is facial, and will prevail even if the statute could constitutionally be applied to a litigant. *State v. Motherwell*, 114 Wn.2d 353, 370-71, 788 P.2d 1066 (1990).

In *Huff*, this court outlined the rule to be applied in overbreadth challenges:

> A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. The First Amendment overbreadth doctrine may invalidate a law on its face only if the law is "substantially overbroad." In determining overbreadth, "a court's first task is to determine whether

> the enactment reaches a substantial amount of constitution- ally protected conduct." Criminal statutes require particular scrutiny and may be facially invalid if they "make unlawful a substantial amount of constitutionally protected conduct . . . ." This standard is very high and speech will be protected " '. . . unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.' "

*Huff*, 111 Wn.2d at 925 (citations omitted) (quoting *City of Houston v. Hill*, 482 U.S. 451, 461, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987)).

The City of Bellevue asserts it has the police power to pass this Ordinance. Under our state constitution, police power extends to regulations that promote the health, peace, safety, and general welfare of the people of this state. WASH. CONST. art. XI, § 11; *State v. Brayman*, 110 Wn.2d 183, 192-93, 751 P.2d 294 (1988) (upholding the constitu- tionality of a law determining intoxication by alcohol in the breath rather than alcohol in the blood). The parts of the Ordinance that do not involve "profane"—in the secular sense—might be within Bellevue's police powers, but are not before this court. This court will not invalidate an entire statute when a provision is unconstitutional, except under limited circumstances not relevant here. *State v. Anderson*, 81 Wn.2d 234, 236, 501 P.2d 184 (1972).

"A statute is a valid exercise of police power if it (1) tends to correct some evil or promote some interest of the State, and (2) bears a reasonable and substantial relation- ship to accomplishing its purpose." *Brayman*, 110 Wn.2d at 193 (citing *State v. Conifer Enters., Inc.*, 82 Wn.2d 94, 96- 97, 508 P.2d 149 (1973)). The City of Bellevue does not cite to any case where outlawing "profane" speech was found to be substantially related to an interest of the state, nor does Bellevue argue the catchall provision in BCC 10A.84- .090(A)(4) is so related. Instead, Bellevue compares the Ordinance to other telephone harassment ordinances and laws that have been upheld as constitutional.

Cases that have upheld telephone harassment laws are

significantly different from the instant case. *See, e.g., Huff,* 111 Wn.2d at 924 (defendant made repeated and threatening phone calls to victim and her mother); *Alexander,* 76 Wn. App. at 832-33 (one defendant made 680 "hang-up" calls over four days to a United Way Crisis Clinic; another telephoned a former girl friend up to 15 times per day over several months); *State v. Dyson,* 74 Wn. App. 237, 240, 872 P.2d 1115 (1994) (to avoid defendant, a former boyfriend, the victim moved twice and changed her unlisted number several times, but defendant continued to make threatening calls). These cases are factually different: in the number of calls made; in the specificity of the threats made; and the vulnerability of the recipients of the calls. These cases do not involve or analyze the specific language of the Ordinance at issue here. Rather, the court in those cases analyzed generally whether terms like "embarrass" were vague or overbroad. The issue in this case—whether an ordinance criminalizing telephone calls that have the intent to disturb "without purpose of legitimate communication" or contain "profane" words is facially overbroad—has not been addressed by this court.

The City of Bellevue argues the intent requirement in the Ordinance saves it from overburdening speech. The Ordinance requires the call be made "with intent to disturb, embarrass, harass, intimidate, threaten or torment any other person . . . ." BCC 10A.84.090(A). Bellevue analogizes this case to an unsuccessful challenge to the state telephone harassment law, RCW 9.61.230(1). The Court of Appeals found:

> Although RCW 9.61.230(1) contains a speech component, it is clearly directed against specific conduct—making telephone calls with the intent to harass, intimidate, or torment another while using lewd, lascivious, profane, indecent, or obscene words or language . . . . Because the requisite intent establishes the criminality of the communicative conduct, any impact that RCW 9.61.230(1) has on speech is insubstantial.

*Dyson,* 74 Wn. App. at 243.

However, since this Ordinance reaches protected speech,

it still must be content neutral. This was not raised in *Dyson*. While "profane" was recited in the statute at issue in *Dyson*, the court did not analyze whether the ordinance burdened protected speech. Even if a category of speech can be burdened as low value speech, the government may not make further content-based discriminations, except for certain narrowly drawn exceptions. *See R.A.V.*, 505 U.S. 377.[5] Religious speech is protected under the First Amendment, even when it appears in a context where low value speech could be constitutionally proscribed. There is a " 'heavy presumption *against* its constitutionality.' " *Conifer Enters.*, 82 Wn.2d at 99 (quoting *Fine Arts Guild, Inc. v. City of Seattle*, 74 Wn.2d 503, 506, 445 P.2d 602 (1968)).

We agree that the City of Bellevue has a compelling interest in preventing telephone harassment. However, the means employed must be necessary to achieve the ends sought: "a mere rational, reasonable, or even substantial relationship will not suffice." *Conifer Enters.*, 82 Wn.2d at 99 (citing *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S. Ct. 247, 5 L. Ed. 2d 231 (1960); *NAACP v. Alabama*, 377 U.S. 288, 307-08, 84 S. Ct. 1302, 12 L. Ed. 2d 325 (1964)). Since Bellevue can achieve its legitimate ends without touching on religious speech, an intent requirement does not save the Ordinance.

We hold the Ordinance reaches speech protected by the First Amendment, because by using the term "profane," it reaches speech critical of a religion. The City of Bellevue has not established it has the police power to pass an ordinance that so burdens speech. Bellevue submitted no evidence or argument that forbidding antireligious speech is necessary to prevent any clear and present danger. Since the burden is on the government to establish that an impairment of a constitutionally protected right is necessary to serve a compelling state interest, which Bellevue

---

[5]The exceptions include discrimination based on a "nonspeech" element, *R.A.V.*, 505 U.S. at 386; secondary effects, *id.* at 389; and when "the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable . . . ." *Id.* at 388.

has not so shown, we conclude this Ordinance sweeps much more broadly than necessary to protect victims of harassment.

### Vagueness

Lorang contends the Ordinance is void for vagueness on the grounds that "[w]ithout purpose of legitimate communication," BCC 10A.84.090(A)(4) is not sufficiently definite to put the public on notice, and does not provide ascertainable standards to law enforcement.[6]

> Under the due process clause of the Fourteenth Amendment, a statute is void for vagueness if either: (1) the statute "does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed"; or (2) the statute "does not provide ascertainable standards of guilt to protect against arbitrary enforcement."

*State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

Lorang argues that section (A)(4) of the Ordinance is vague because the language of that section fails to give sufficient notice of what is proscribed, since "legitimate communication" is a highly subjective standard. *See, e.g., Halstien*, 122 Wn.2d at 117. We agree. The average citizen has no standard with which to measure "legitimate communication" against. The Ordinance gives no guidance.

Similarly, section (A)(4) does not provide a clear and objective guide to law enforcement. Laws may not "trap the innocent by not providing fair warning" or delegate "basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92

---

[6]While this argument was not raised at trial or to the Court of Appeals, and the City of Bellevue has not responded in its briefing (nor objected to its consideration), the court will consider this as a potential "manifest error affecting a constitutional right." RAP 2.5(a)(3).

S. Ct. 2294, 33 L. Ed. 2d 222 (1972) (emphasis omitted). This court has invalidated criminal laws for vagueness when they are overly subjective.

> What is forbidden by the due process clause are criminal statutes that contain no standards and allow police officers, judge, and jury to subjectively decide what conduct the statute proscribes or what conduct will comply with a statute in any given case. Thus . . . we struck down statutes containing inherently subjective terms such as loiter or wander, wanders and prowls with unlawful purpose, [and] lawful excuse.

*State v. Maciolek,* 101 Wn.2d 259, 267, 676 P.2d 996 (1984) (citations omitted).

Furthermore, we are especially cautious in the interpretation of vague statutes when First Amendment interests are implicated. "[W]here a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,'[7] it 'operates to inhibit the exercise of [those] freedoms . . . .' " *Grayned,* 408 U.S. at 109 (alterations in original) (quoting *Cramp v. Board of Pub. Instruction,* 368 U.S. 278, 287, 82 S. Ct. 275, 7 L. Ed. 2d 285 (1961)).

Under the language of this Ordinance, law enforcement has no guide beyond the subjective impressions of the person responding to a citizen complaint. Without statutory, objective standards giving guidance, this section of the Ordinance fails. Since "without purpose of legitimate communication" does not give notice of what conduct is forbidden, and since it does not guide law enforcement, we hold that portion of the Ordinance unconstitutionally void for vagueness.

## Harmless Error

Lorang argues the Court of Appeals erred by applying the harmless error test to his case. He contends after acknowledging the Ordinance has an unconstitutional

---

[7]*Grayned,* 408 U.S. at 109 (quoting *Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S. Ct. 1316, 12 L. Ed. 2d 377 (1964)).

reach that must be saved by a jury instruction which, in fact, was not given, the court was incorrect in applying this test and ruling the error was harmless. The City of Bellevue has not responded to this argument or provided any briefing arguing this issue.

 This court has held a "constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless." *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

> An instructional error is presumed to have been prejudicial unless it affirmatively appears that it was harmless. "A harmless error is an error which is *trivial*, or *formal*, or *merely academic*, and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the outcome of the case.*"

*State v. Smith*, 131 Wn.2d 258, 263-64, 930 P.2d 917 (1997) (citation omitted) (quoting *State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977)); *see also* Dennis J. Sweeney, *An Analysis of Harmless Error in Washington: A Principled Process*, 31 GONZ. L. REV. 277 (1995/96).

The Court of Appeals ruled, "[a]lthough no such instruction was given in this case, we decline Mr. Lorang's request for remand and a new trial because, excluding the one arguably antireligious statement at issue, we find the evidence of guilt overwhelming." *Lorang*, 92 Wn. App. at 189. The court considered the untainted evidence and found that the unrebutted evidence established Lorang used obscene language in the context of harassing telephone calls, and that any reasonable jury would have reached the same conclusion. *Lorang*, 92 Wn. App. at 196.

However, the issue here has less to do with *evidence* and more to do with the way the Ordinance was presented to the jury. Lorang does not contend the evidence was improperly admitted. Instead, he argues the Ordinance

facially unconstitutional and the State has not met its burden of proving the error in this case was harmless beyond a reasonable doubt. An appellate court must "ensure that defendants are convicted under the statute as it is subsequently construed and not as it was originally written." *Osborne v. Ohio*, 495 U.S. 103, 118, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990).

Since we find the Ordinance unconstitutional, there is a presumption of prejudice to the defendant. *State v. Fowler*, 114 Wn.2d 59, 63, 785 P.2d 808 (1990). This presumption can be overcome if the City of Bellevue can show beyond a reasonable doubt that any reasonable jury would reach the same result without the error. *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996) (citing *State v. Aumick*, 126 Wn.2d 422, 430, 894 P.2d 1325 (1995)). However, Bellevue fails to argue that with an appropriate limiting instruction, a jury would have convicted Lorang. Therefore, Bellevue has not met its burden of showing beyond a reasonable doubt that a jury would have convicted Lorang without the constitutional error.

We reverse the Court of Appeals.

GUY, C.J., SMITH, MADSEN, ALEXANDER, and SANDERS, JJ., and SWEENEY, J. PRO TEM., concur.

TALMADGE, J. (dissenting) — Because I agree with the well-reasoned majority opinion of the Court of Appeals in this case, I dissent. Washington courts have generally rejected First Amendment challenges to laws against telephone harassment. *See, e.g., City of Seattle v. Huff*, 111 Wn.2d 923, 767 P.2d 572 (1989); *State v. Alexander*, 76 Wn. App. 830, 888 P.2d 175, *review denied*, 127 Wn.2d 1001 (1995); *State v. Dyson*, 74 Wn. App. 237, 872 P.2d 1115, *review denied*, 125 Wn.2d 1005 (1994). We generally presume ordinances are constitutional; thus, Lorang here has the burden of demonstrating beyond a reasonable doubt that Bellevue's telephone harassment ordinance is unconstitutional. *See City of Spokane v. Fischer*, 110 Wn.2d 541, 754 P.2d

1241 (1988). Moreover, we construe our statutes and ordinances in such a fashion as to give words contained in such enactments their ordinary meaning. *State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992) (when resorting to statutory construction, this Court first looks to the plain meaning of the word); *see also State v. Standifer*, 110 Wn.2d 90, 92, 750 P.2d 258 (1988) ("Words are given the meaning provided by the statute or, in the absence of specific definition, their ordinary meaning.").

As the Court of Appeals noted below, there is nothing about the term "profane" which would suggest a religious connotation in its common usage. In our society, the terms "profane" or "profanity" have entirely secular meanings. These terms connote vulgar or coarse language deemed inappropriate in a civilized and polite society. In fact, one recently edited dictionary defines "profane" as "to debase by a wrong, unworthy, or vulgar use." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 930 (10th ed. 1993). Unlike the majority here, I do not believe it is our obligation to evaluate an ordinance or statute in a facial challenge in such a way as to develop every conceivable interpretation of an enactment so as to defeat it. The ordinance here was designed to deal with the problem of telephone harassers rather than the piety of the persons involved with the statute. I believe a facial challenge to Bellevue's ordinance fails.

The majority goes on to address whether BELLEVUE CITY CODE 10A.84.090(A)(4) is void for vagueness because the actions of the harasser were " 'without purpose of legitimate communication.' " Majority at 31. I would not address this conclusion. Nowhere is the issue of a facial invalidity challenge based on this portion of Bellevue's ordinance raised in Lorang's petition for review. The question is raised solely in the memorandum of amicus curiae American Civil Liberties Union of Washington. Ordinarily, we do not review issues raised solely by amicus curiae. *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 272 n.1, 943 P.2d 1378 (1997) (noting appellate courts will not usually decide an issue raised only by amicus); *State v. Clark*, 124 Wn.2d 90, 101,

875 P.2d 613 (1994), *overruled on other grounds by State v. Catlett*, 133 Wn.2d 355, 945 P.2d 700 (1997). Moreover, Lorang's failure to assert the issue in his petition for review forecloses our review. RAP 13.7(b); RAP 13.4(c)(5); *Shumway v. Payne*, 136 Wn.2d 383, 392-93, 964 P.2d 349 (1998) (on appeal, this Court reviews "only the questions raised in the petition and in the answer to the petition, unless the court orders otherwise"); *see also Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 496, 844 P.2d 403 (1993) (citing to RAP 13.7(b)).

Lorang's conduct in this case crossed the line into telephone harassment of King County Housing Authority staff persons. His coarse and vulgar communication with the Housing Authority's staff had nothing to do with communication of First Amendment concerns regarding petitioning the government for redress of grievances, nor did it have anything to do with any allegedly sacrilegious conduct on his part. He simply engaged in telephone harassment of Housing Authority staff and was appropriately called to task for it by a jury in the Bellevue Municipal Court. I would affirm the Court of Appeals in this case.

IRELAND, J., concurs with TALMADGE, J.