[No. 29257-2-II. Division Two. February 17, 2004.]

THOMAS J. YOUNG, ET AL., *Appellants*, v. PIERCE COUNTY, *Respondent*.

178

*Eric R. Stahlfeld*, for appellants.

*Gerald A. Horne, Prosecuting Attorney*, and *Jill Guernsey, Deputy*, for respondent.

SEINFELD, J. — Thomas J. and Carolyn L. Young appeal a Pierce County (County) land use ruling that applied wetland regulations to an "area" of their property and denied them an agricultural exemption. They contend that (1) the word "area" is unconstitutionally vague; (2) the County failed to show that the property is a wetland or is otherwise subject to regulation; (3) if wetland regulations

apply, the evidence established the agricultural exception; and (4) the County's notice of violation was inadequate. We affirm.

## FACTS

The Youngs purchased 25 acres in Pierce County in February 2000. Previous owners had used the entire parcel for various agricultural activities including horse grazing. The Youngs continued to graze horses on part of the property.

The northwest corner of the property is approximately 10,000 to 12,000 square feet, described as "between the area cleared for the power line and 40th Ave. E, north of the east/west drainage ditch." Clerk's Papers (CP) at 19-20.

The Youngs started to clear trees and vegetation from the northwest corner in March 2000, and recommenced this work in August 2000. On August 21 and 25, 2000, the County issued two correction notice/cease and desist orders under Pierce County Code (PCC) Title 18E—Critical Areas Ordinance (Title 18E). The orders indicated that the Youngs were violating the Critical Areas Ordinance by clearing vegetation on or near a wetland.[1]

The Youngs appealed the orders. Following a public hearing, the hearing examiner ruled that Title 18E applied to the property; that an exemption for agricultural land was not applicable because the land in the northwest corner had been left idle for over five years; and that the Youngs must complete a wetland review.

On further appeal, the superior court found no evidence of an actual Title 18E violation by the Youngs because the County had not yet verified the wetland areas. The court gave the County a "reasonable period of time" to conduct a

---

[1] The sections of the Critical Areas Ordinance, Title 18E PCC at issue are: PCC 18E.10.030 (Intent); PCC 18E.10.050 (Definitions); PCC 18E.20.020(C) (Regulated Uses and Activities); PCC 18E.20.030(A) (Exemptions: Existing Agricultural Activities).

wetland determination, stating that it would vacate the cease and desist orders if the County did not act. CP at 119.

The Youngs then appealed to this court, arguing that the word "*area*" was unconstitutionally vague as applied to them; that the application of Title 18E to their property was clearly erroneous; that there was a lack of substantial evidence to support the examiner's factual finding that the agricultural exemption did not apply; and that they did not receive adequate notice of their violation.

## ANALYSIS

The Land Use Petition Act (LUPA) governs judicial review of local land use decisions. Ch. 36.70C RCW. To warrant review under LUPA, the appellant has the burden of showing that one of the following six standards applies. RCW 36.70C.130(1):

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

The Youngs do not mention LUPA or its standards in their briefs to this court. Thus, they have not alleged that any of the above standards specifically warrants review here.

We review an appeal from a superior court's decision on an administrative land use appeal from the position

of the superior court. *HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.*, 148 Wn.2d 451, 468, 61 P.3d 1141 (2003). We examine questions of law de novo, based on the administrative record, to determine whether fact and law support the examiner's decision. *HJS Dev.*, 148 Wn.2d at 468; *City of University Place v. McGuire*, 144 Wn.2d 640, 647, 30 P.3d 453 (2001). We review the hearing examiner's factual findings under a substantial evidence standard, viewing the evidence in the light most favorable to the " 'party who prevailed in the highest forum that exercised fact-finding authority.' " *McGuire*, 144 Wn.2d at 652 (quoting *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)).

## I. THE TERM "AREA"

■ The Youngs claim that as applied to them, the term "area" in PCC 18E.20.030(A) is void for vagueness. PCC 18E.20.030(A); Br. of Appellant at 20-21. LUPA allows this assignment of error under RCW 36.70C.130(1)(f) as a claim that the land use decision violates the appellant's constitutional rights.

Title 18E regulates certain activities, including clearing vegetation on land that the County has designated a critical area. PCC 18E.20.020(C). Wetlands are a type of critical area under Title 18E PCC. Ch. 18E.30 PCC. The County had identified the Young property as a critical area containing unverified wetlands before issuing the orders here.

There is an exemption from the prohibition against clearing vegetation in a wetland for land used for "[e]xisting agricultural activities." PCC 18E.20.030(A). But this exception does not apply if "the *area* on which [the agricultural activities] were conducted has been converted to a non-agricultural use or has lain idle more than five years." PCC 18E.20.030(A) (emphasis added). The hearing examiner ruled that the Youngs were not entitled to the agricultural exemption for the northwest corner notwithstanding their

use of the balance of the property for agricultural use because the northwest corner had been left idle for over five years.

■ An ordinance is unconstitutionally vague if it does not provide " 'fair warning and nondiscriminatory enforcement.' " *City of Seattle v. Eze*, 45 Wn. App. 744, 748, 727 P.2d 262 (1986) (quoting *Karlan v. City of Cincinnati*, 416 U.S. 924, 94 S. Ct. 1922, 40 L. Ed. 2d 280 (1974)). "A statute is void for vagueness . . . if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Myrick v. Bd. of Pierce County Comm'rs*, 102 Wn.2d 698, 707, 677 P.2d 140, 687 P.2d 1152 (1984). But the ordinance does not need to "meet impossible standards of specificity." *Anderson v. City of Issaquah*, 70 Wn. App. 64, 75, 851 P.2d 744 (1993); *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990).

■ In examining a vagueness challenge to a land use regulation, we judge the ordinance as applied, not for facial vagueness. *Swoboda v. Town of La Conner*, 97 Wn. App. 613, 618-19, 987 P.2d 103 (1999). The Youngs contend that Title 18E does not provide fair warning that it could apply to only a portion of their land if they continued to use the majority of their land for agricultural use. They assert that the County has applied the word "area" in an ad hoc manner in this case.

■ Title 18 E does not define "area." Thus we look to its dictionary definition. *Gerberding v. Munro*, 134 Wn.2d 188, 199, 949 P.2d 1366 (1998). The dictionary defines "area" as "any particular extent of space or surface" or "the range or extent covered by or included in some thing or concept." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 115 (15th ed. 1966).

This definition suggests that an area is a limited space, something less than a whole. It also suggests that the meaning of the word "area" is variable and that it is necessary to consider the regulation's purpose to determine the meaning of the word in that context.

We look to the regulation as a whole to derive its intent. *Walk v. Dep't of Licensing*, 95 Wn. App. 653, 657, 976 P.2d 185 (1999). The stated intent of Title 18E "is to protect critical areas of Pierce County by establishing minimum standards for development of sites which contain or are adjacent to critical areas." PCC 18E.10.030. The ordinance uses the word "areas" to describe critical portions of land that warrant additional protection. PCC 18E.10.030. And the Youngs do not dispute that the County may designate a "critical area" that comprises less than a total parcel.

Further, if the drafters of the ordinance had intended to make the agricultural exemption available unless the property owner let his *entire* parcel of property lie idle, the drafters could easily have used the words "entire parcel" or "property" instead of the word "area." But doing so would allow property owners to convert significant portions of their land lying within a critical area to nonagricultural uses and still maintain an agricultural exemption to Title 18E based on their continuation of agricultural practices on a minor part of the land. This would appear to undermine the intent of Title 18E to protect critical areas of Pierce County. PCC 18E.10.030.

The hearing examiner defined the nonexempt "area" as "the northwest portion of the site between the area cleared for the powerline and 40th Avenue East, north of the east west drainage ditch." CP at 12. The specific area, approximately 10,000 to 12,000 feet, is not insignificant or undistinguishable from the remaining portion of the Young property. The hearing examiner then applied Title 18E to that portion of the Young property that he determined was no longer exempt.

Based on the intent of Title 18E and the substantial weight we give to an agency's interpretation of regulations within its area of expertise, we cannot say that the examiner made an "erroneous interpretation of the law." RCW 36.70C.130(1)(b); PCC 18E.10.030; *see also Children's Hosp. & Med. Ctr. v. Dep't of Health*, 95 Wn. App. 858, 864, 975 P.2d 567 (1999). Nor have the Youngs shown that the

word "area," as the ordinance uses that word and as the hearing examiner applied it here, was so vague as to deny them fair warning that they could lose the agricultural exemption on a portion of their land if they allowed that portion to lie idle for five years.

## II. APPLICATION OF TITLE 18E TO THE YOUNG PROPERTY

The Youngs challenge the hearing examiner's conclusion that Title 18E applies to their property. Under LUPA, we review this matter to determine if the decision is a "clearly erroneous application of the law to the facts." RCW 36.70C.130(1)(d).

 Title 18E applies to all "[p]roperties containing critical areas" as designated by the County. PCC 18E.10-.060(A)(1). Wetlands are included as a type of "critical area[ ]" that Title 18E PCC is intended to regulate. PCC 18E.10.030. The County Wetland Atlas identifies a number of "unverified"[2] wetlands on the Young property.

The Youngs contend that because the wetlands on their property are "unverified," their land is not a critical area and Title 18E does not apply. The County responds that although it does not know the extent of the wetlands and their buffers on the Young property, the northwest area of the property is identified as a potential wetland on the County Wetland Atlas and that this makes it a designated critical area subject to regulation under Title 18E.

Relying on PCC 18E.30.030, the County argues that before a property owner may conduct a regulated activity in a critical area, "[t]he Department may require a delineation report to determine if a regulated wetland is present on the site or to determine if the proposed activity is within 150 feet of a wetland." PCC 18E.30.030(A)(1). According to the County, the delineation report will determine "the exact

---

[2] There is no definition of "unverified wetlands" in Title 18E. At the request of the Superior Court, the County submitted a posthearing brief explaining why unverified wetlands are subject to regulation under Title 18E.

boundary and the type or category of wetlands present . . . if the property owner conducts any activities on site which are regulated." CP at 90.[3]

Properties within critical areas are subject to regulation under Title 18E if the owner engages in any listed "regulated activity." PCC 18E.10.050. Clearing vegetation is a regulated activity when the clearing is within a wetland or its buffer.[4] PCC 18E.20.020(C)(6). A regulated buffer area surrounding a wetland may extend up to 150 feet, depending on the class of wetland.[5] PCC 18E.30.060.

The Youngs engaged in the regulated activity of clearing vegetation, and the Wetland Atlas maps show their land as a wetland. Thus, the property fits within the critical area designation. Consequently, the hearing examiner did not make a clearly erroneous application of the law to the facts by ruling that Title 18E applies to the Young property. RCW 36.70C.130(1)(d).

The remaining issue is the proper scope of wetland review. The hearing examiner required the Youngs to "comply with Title 18 E and complete wetland review." CP at 14.

▊ Title 18E provides the procedures for a *wetland delineation report* "to determine if a regulated wetland is present on the site or to determine if the proposed activity is within 150 feet of a wetland." PCC 18E.30.030(A)(1). It also requires the applicant to pay the appropriate fee prior to a site inspection by department staff. PCC 18E.30.030(A)(3).[6]

---

[3] The Youngs do not challenge either the designation on the county atlas or the scheme that requires identification and delineation of wetlands where the atlas indicates they may be present. PCC 18E.30.030(A). We make no determination regarding these issues because they have not been briefed or argued. *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 689 n.4, 974 P.2d 836 (1999); RAP 10.3(a)(5).

[4] A "buffer" is "an area contiguous with a critical area that is required for the integrity, maintenance, function, and structural stability of the critical area." PCC 18E.10.050(M).

[5] There are four classes of wetland. A Class I wetland has a buffer zone of 150 feet. PCC 18E.30.060. PCC 18E.30.020 contains the criteria for determining the class of wetland.

[6] The cease and desist order, as well as the County's testimony at the administrative hearing, refers to the requirement of a wetland review when there

The County's cease and desist order requires wetland review "to verify the presence of wetlands and buffers in the area and to provide adequate mitigating [sic] for any impacts that may have occurred." Admin. R. Report of Proceedings (RP) at 10.

The "wetland review" procedure applies when a party files an application with the County to engage in a particular regulated activity in a wetland area. PCC 18E.30.090; ch. 18.60 PCC. Although the Youngs have not filed an application with the County, they commenced a regulated activity—vegetation removal—in a critical area.

It is clearly within the statutory scheme to require compliance with the application process under these circumstances. Thus, the hearing examiner did not err in consolidating the wetland determination and wetland review processes under PCC 18E.30.090(A)(2).

 Finally, the County's cease and desist order requires the Youngs to obtain a biologist to delineate and classify wetlands on their property. The Youngs claim that there is no authority for this in the PCC. We disagree: PCC 18E.30.030(A) specifically imposes costs of a wetland delineation report on the landowners.

## III. THE AGRICULTURAL EXEMPTION

 The Youngs next argue that there is a lack of substantial evidence to support the hearing examiner's factual determination that the agricultural exemption did not apply. Under LUPA, we review the examiner's decision to see if it is "supported by evidence that is substantial when viewed in light of the whole record before the court." RCW 36.70C.130(1)(c). To meet the substantial evidence standard, "there must be a sufficient quantity of evidence in the record to persuade a reasonable person that the de-

---

are wetlands within "158 feet." Report of Proceedings (RP) at 49. But the greatest buffer zone for a wetland is 150 feet, and we find no other authority in the ordinance that suggests 158 feet is the appropriate buffer. PCC 18E.30.060.

clared premise is true." *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 751-52, 49 P.3d 867 (2002).

The Youngs claim that the entire 25 acre parcel has continuously been used to pasture their horses and that the northwest area has not "lain idle" for five years. Br. of Appellant at 17. Thus, they contend that the exception to PCC 18E.20.030(A) for an area that "has lain idle more than five years" does not apply to their property. Br. of Appellant at 17.

The County acknowledges that the Young property has been used for agricultural activities in the past and that the Youngs currently use the majority of the property for grazing and horse pasture. The dispute is limited to the use of the northwest area of the property over the past five years.

The hearing examiner received letters from community members, testimony from neighbors, and testimony from County biologists who had visited the Young property. A number of letter writers stated that they had seen horses on the property but it was not clear where those horses were on the property. There also was testimony describing the northwest corner as overgrown with alders and blackberry bushes and basically "impenetrable." CP at 12.

The evidence also included a number of aerial photographs showing the property over the last 20 years. They showed that the northwest corner was clear in 1991 but had become overgrown since that time.

Viewing the record as a whole, the evidence is sufficient to persuade a reasonable person that the northwest corner of the Young property has lain idle for over five years. RCW 36.70C.130(1)(c). Therefore the examiner's conclusion should not be disturbed.

## IV. ADEQUACY OF NOTICE TO CEASE AND DESIST

Finally, the Youngs contend that the county official failed to comply with the required process when issuing the cease

and desist order.[7] RCW 36.70C.130(1)(a). Under Title 18 PCC, cease and desist orders must "specify each violation by reference to the specific Title, Chapter, and Section." PCC 18.140.040(C)(2), .020. The Youngs contend that the County "has <u>never</u> cited the specific section it claims Young has violated." Br. of Appellant at 6.

■ LUPA requires proper process unless the "error was harmless." RCW 36.70C.130(1)(a). Harmless error is one that is " 'not prejudicial to the substantial rights of the party assigning [error,]' " and does not affect the outcome of the case. *City of Bellevue v. Lorang*, 140 Wn.2d 19, 32, 992 P.2d 496 (2000) (quoting *State v. Smith*, 131 Wn.2d 258, 264, 930 P.2d 917 (1997)).

The record shows several communications from the County to the Youngs in addition to the cease and desist order. In March 2000, environmental biologist Sheila Englehardt spoke in person with Carolyn Young regarding the critical area regulations. In August 2000, the County posted two correction notice/cease and desist orders at the Young property and mailed a copy of one of the orders to the Young home. In addition, biologist David Risvold telephoned the Youngs and requested that they cease clearing and grading their land because this was "not considered to be an exempt agricultural activity." RP at 7, 8.

The August 21, 2000 cease and desist order states that "[t]he unpermitted work is in violation of Title 18E, Development Regulations—Critical Areas Ordinance." Admin. Record (AR) at 47. The notice specifically describes the activity violating Title 18E as "[c]learing and removing vegetation, grading and ditching in wetlands and their buffers." AR at 47. The order also refers the Youngs to chapter 18E.20 PCC for a list of regulated activities, which includes clearing vegetation, and states that PCC 18E.20.030 does not provide an exemption because the land has lain idle for over five years.

---

[7] The Youngs raised this issue before the hearing examiner, but the examiner did not resolve it in his conclusions.

The August 25, 2000 cease and desist order refers to Title 18E. It further identifies a number of sections in what is currently Title 17A PCC, Site Development and Stormwater Drainage, that the Youngs may be violating.[8]

■■■ Although neither order states that the Youngs are in violation of PCC 18E.20.020, both notices cite a violation of Title 18E; list clearing vegetation within 158 feet of a wetland as a specific violation; and explain that clearing is a regulated activity under chapter 18E.20 PCC. This detail of notice was sufficient to give them notice of the ordinance that was at issue and of the conduct that allegedly violated the ordinance. Thus, the Youngs have not shown that the error was prejudicial to their substantial rights or affected the outcome. *Lorang*, 140 Wn.2d at 32. Consequently, we conclude that the County's omission of the specific section it claims the Youngs violated was harmless and is not a basis for relief.

■■■ Without citing supporting authority, the Youngs assert that this notice error violated their procedural due process rights.[9] As we have frequently stated, " 'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.' " *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986) (quoting *United States v. Phillips*, 433 F.2d 1364, 1366 (8th Cir. 1970)). Further, "the mere issuance and filing of the [notice of violation] does not constitute a property interest giving procedural due process protections." *Cranwell v. Mesec*, 77 Wn. App. 90, 111 n.23, 890 P.2d 491 (1995). Thus, this

---

[8] The County used an out of date form for the citation. The form listed Title 18C PCC as the proper title and Englehardt apparently incorrectly altered the form to read "17D." But there is no Title 17D PCC.

[9] The Youngs cite one case for the general proposition that due process requires notice and an opportunity to be heard, *Silver Firs Town Homes, Inc. v. Silver Lake Water District*, 103 Wn. App. 411, 425, 12 P.3d 1022 (2000). Ironically, the court in *Silver Firs* dispenses with the appellants' due process contention because their argument is unsubstantiated. 103 Wn. App. at 426.

contention does not warrant relief.

We affirm.

BRIDGEWATER, J., concurs.

MORGAN, J. (concurring in part and dissenting in part) — Neighbors complained to Pierce County (County) that Young was using his land improperly. An employee of Pierce County went to the land to investigate. The land was posted "no trespassing," so the employee could not enter to see (a) whether the land contained wetlands or (b) how the land was actually being used by Young. Nonetheless, the employee issued a citation, which the County calls a "cease-and-desist order," alleging that Young was in violation of the County's wetlands ordinance. The employee did not seek an administrative search warrant or otherwise try to gather evidence.

Young appealed the citation to a hearing examiner, who denied the appeal, and then to the superior court. The superior court held that "[t]here is not substantial evidence in the record made before the Examiner to support the Examiner's finding that petitioners graded and cleared a portion of their property within a wetland and/or wetland buffer regulated under PCC ch. 18E.30 [the County's wetlands ordinance]."[10] But rather than dismissing the citation for lack of evidence, the superior court ordered Young to obtain—and pay for—a report "delineat[ing]" whether he actually has any wetlands on his property.[11] Young now appeals that order.

When Young appealed the County's administrative orders from the hearing examiner to superior court, he invoked the superior court's appellate jurisdiction.[12] When the superior court found that the County's administrative

---

[10] Clerk's Papers (CP) at 123.

[11] See CP at 124 (superior court order requiring Young "to submit a delineation report of the wetlands and wetland buffers"). At oral argument, Young's counsel claimed that the cost to obtain such a report is substantial.

[12] E.g., Benchmark Land Co. v. City of Battle Ground, 146 Wn.2d 685, 693, 49 P.3d 860 (2002) (" '[U]nder LUPA [Land Use Petition Act, ch. 36.70C RCW], a party seeks judicial review by asking the superior court to exercise appellate

orders were not supported by the evidence, it exhausted its jurisdiction regarding the citation, and it could not thereafter compel Young to obtain and pay for a "wetlands delineation report . . . ."[13] After concluding that the citation was unfounded, the court could not require *Young* to marshal the very same evidence that *the County* should have marshaled before issuing a citation.

The County claims that the record made before the hearing examiner contains sufficient evidence to support the citation. The County claims this, however, only because Young's property "[i]s a [d]esignated [c]ritical [a]rea as [i]t [i]s [s]hown on the County Wetland Atlas."[14] The County does not demonstrate, or even attempt to demonstrate, that the record made before the hearing examiner contains evidence that Young was actually infringing on wetlands. Thus, the County offers nothing to contravene the trial court's conclusion that the hearing examiner's record lacks evidence sufficient to show that Young "graded and cleared a portion of [his] property within a wetland and/or wetland buffer . . . ."

The County may be complaining that unless it can force Young to obtain and pay for a wetlands delineation report, it will have no way to obtain the evidence it needs to enforce its wetlands ordinance against him. If it is, however, its complaint is not valid. It has every right to go onto Young's land despite his no-trespassing signs, and thus to obtain the evidence it needs to support its citation—provided that it first applies for and obtains an administrative search warrant.[15] Correspondingly, Young has a right to assert and maintain his privacy—even if the County finds that incon-

---

jurisdiction.' ") (quoting *Sunderland Family Treatment Servs. v. City of Pasco*, 107 Wn. App. 109, 117, 26 P.3d 955 (2001)).

[13] Br. of Resp't at 18.

[14] Br. of Resp't at 16.

[15] *See, e.g.*, 4 Wayne R. LaFave, Search and Seizure, § 10.1(a), at 373 (3d ed. 1996) (discussing *Camara v. Mun. Court*, 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967), and *See v. City of Seattle*, 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967)) ("Except for emergency situations, the inspector, if turned away by the owner or occupant of the premises, must obtain a search warrant." "The probable

venient—unless and until the County obtains and serves an administrative search warrant.

I would reverse the trial court's order that Young obtain and pay for a wetlands delineation report; I would affirm the trial court's conclusion that the record made before the hearing examiner lacks evidence sufficient to support the administrative citations; and I would dismiss the administrative citation with prejudice.

cause needed to justify the issuance of a warrant for inspection . . . may be based upon the passage of time, the condition of the building, or the condition of the entire area.").