12 P.3d 1022 (2000)
103 Wash.App. 411
SILVER FIRS TOWN HOMES, INC., a Washington corporation, and Our Land, Inc., a Washington corporation, Appellants,
v.
SILVER LAKE WATER DISTRICT, a Washington municipal corporation; Willis Anderson, in his capacity as a Commissioner; Don A. Rider, in his capacity as a Commissioner; and Roderick Keppler, in his capacity as a Commissioner, Respondents.
No. 44982-6-I.
Court of Appeals of Washington, Division 1.
September 18, 2000.
Publication Ordered November 6, 2000.
*1023 F. Steven Lathrop, Lathrop, Winbauer, Harrel & Slothower, Ellensberg, for Appellants.
*1024 Peter S. Dijulio, Foster, Pepper & Shefelman, Seattle, Kyle L. Branum, Bellevue, for Respondents.
ELLINGTON, J.
Silver Firs Town Homes, Inc. and Our Land, Inc. contracted with Silver Lake Water District to construct an extension between their planned development and the District's water and sewer system. The District thereafter increased service rates and connection charges, which applied to most of the Silver Firs project.
Because the District followed proper procedures, the rate and connection charge increases were properly implemented, and Silver Firs' statutory and due process arguments are without merit, we affirm summary judgment for the District.

FACTS
The District is a municipal corporation organized under Title 57 RCW.[1] The District serves approximately 9,000 acres and has 10,000 customer water connections and 8,500 sewer connections.
In 1994, Silver Firs began development of Silver Firs Town Homes within the District's boundaries. Silver Firs and the District entered into a contract under which Silver Firs would construct an extension between their project and the District's water and sewer system. Connection to the system was conditioned upon Silver Firs' compliance with the terms and conditions of the contract and other District requirements. Paragraph 10 of the contract specifically provided, "District will not be obligated to allow service connections to its system until all General Facilities (water) and Connection (sewer) charges in effect on the date of application for service have been paid." (Emphasis added).
On February 23, 1995, the District board of commissioners adopted by resolution an amendment to its comprehensive water plan.
On February 27, 1995, the District notified Silver Firs of its acceptance of the water and sewer installation for Silver Firs Town Homes.
On February 28, 1995, the District published a notice in the Everett Herald announcing a hearing on March 16, 1995 "to consider adjustments to the water and sewer rates and charges." Silver Firs had no actual notice of the meeting.
At the meeting, the District adopted four resolutions providing for changes in the water and sewer service rates and connection fees. The new service rates were effective March 20, 1995. Applicants for new connections who presented a building permit issued before May 1, 1995 were to be assessed the amount of the old connection charges; those applying later were to be assessed the new amounts.
No notice of the new rates and charges was published. The District sent a letter notifying approximately 40 companies and individuals "that [had] been actively involved in permitting or involved with development of lots" of the new charges and of the 45-day grace period for connections under the old rates. Silver Firs was not on the list and did not receive a copy of the letter.
As of April 20, 1995, Silver Firs held building permits for four of the 180 lots. Silver Firs tendered payment for hookup of all the lots at the old rates. The District accepted payment at the old rates for the four lots with building permits, and rejected the others at the old rates. Between September 1995 and May 1998, Silver Firs paid hookup fees for the remainder of the lots at the new rates, incurring an additional $335,104. The District denied Silver Firs' request for a refund.
Silver Firs brought this action against the District and the District commissioners in their official capacity. The trial court granted the District's summary judgment motion.

*1025 DISCUSSION

We apply the usual standard for review of a summary judgment order. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See CR 56(c). All facts and inferences are viewed in the light most favorable to the nonmoving party. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998). Questions of law are reviewed de novo. Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994).
When construing statutes, "the primary objective is to ascertain the intent of the Legislature." Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 813, 828 P.2d 549 (1992). We presume that an ordinance setting a connection fee is valid. Landmark Dev., Inc. v. City of Roy, 138 Wash.2d 561, 579 n. 6, 980 P.2d 1234 (1999).
1) Approval of Amendment as a Condition to Passing New Rates
The first question presented is whether the legislature intended to condition passage and implementation of rate increases and charges upon an approved comprehensive water plan. Silver Firs makes the following argument: Because the District can set rates and charges only based on "an adopted comprehensive plan," former RCW 57.08.010(3)(a) (1996); a comprehensive plan is not effective until adopted by the District, approved by the county engineer and health director, and approved by the county council, former RCW 57.16.010 (1996); and amendments to the comprehensive plan are subject to the same requirements, former RCW 57.16.010 (1996); therefore, because all approvals were not in place before implementation of the rate and charge increases, the comprehensive plan was adopted but not effective, and the increases were premature. We reject Silver Firs' argument because it is not supported by the plain language of the statute. The legislature did not equate "adoption" with "effectiveness." For purposes of implementing connection charge increases, only adoption is required.
The District is empowered to fix water rates and assess connection charges. RCW 57.08.010(1). There is no condition precedent to fixing and assessing service rates. To the extent Silver Firs argues otherwise, the statutes offer no support. As for the connection charge, the amount is to be determined by the "the pro rata share of the cost of existing facilities and facilities planned for construction within the next ten years and contained in an adopted comprehensive plan and other costs borne by the district which are directly attributable to the improvements required by property owners seeking to connect to the system." Former RCW 57.08.010(3)(a) (1996) (emphasis added).
Under former RCW 57.16.010 (1996),[2] amendments to the general comprehensive *1026 water plan are subject to the same approvals as new comprehensive water plans (with an exception not applicable here). The general comprehensive water plan is to be adopted by resolution of the District's board of commissioners, and approved of by a county-designated engineer and the county director of health. Former RCW 57.16.010 (1996). "Before becoming effective," the plan is to be approved by the legislative authority of every county within which the district lies,[3] and if within any cities or towns, by the legislative authority of those cities and towns. Former RCW 57.16.010 (1996).
At a regular meeting on February 23, 1995, the District's board of commissioners adopted by resolution an amendment to the comprehensive water plan, addressing the effect of the City of Everett's planned pipeline and the District's share of the associated costs. On March 16, 1995, the District conducted a hearing and adopted four resolutions authorizing new water and sewer service rates, as well as general facility charges for connecting to the District's water and sewer systems. The County Health Department approved the amendment on April 17, 1995. The Snohomish County engineer approved the amendment on May 3, 1995. The Snohomish County Council approved the amendment on May 24, 1995, on which date the amendment became effective. The comprehensive plan amendment was thus not yet "effective" when the new rates and connection charges were passed and implemented.
Former RCW 57.08.010 (1996) requires that the connection charges be based on an "adopted" plan, not an "adopted and effective" plan. When interpreting statutes, we assume the legislature means exactly what it says. City of Kent v. Jenkins, 99 Wash.App. 287, 290, 992 P.2d 1045 (2000). When the legislature uses different language in the same statute to deal with related matters, we presume the legislature intended those words to have different meanings. State v. Jackson, 65 Wash.App. 856, 860, 829 P.2d 1136 (1992). Adoption is the first step, and the validity of the connection charges is not contingent upon approval by the county engineer or legislative authority.
Our reading of the statute is consistent with the legislative mandate that we liberally construe Title 57 RCW to carry out its purposes and objectives. Former RCW 57.02.030 (1996). A liberal construction mandate requires us to view with caution a proposed interpretation that would frustrate the purpose of the statute. See Shoreline Community College Dist. 7 v. Employment Sec. Dep't, 120 Wash.2d 394, 406, 842 P.2d 938 (1992) (applying a liberal construction to the Employment Security Act). The purpose as expressed in the preamble[4] is to create and empower water districts to regulate and control the use, distribution, pricing, and financing of the water supply. See Laws of 1929, ch. 114, preamble. Obtaining approval could be a lengthy and involved process because approval is necessary to coordinate the plan with the county land use effort. See former RCW 57.02.040 (1996); 1977 Final Legislative Report, 45th Leg., at 29. That the legislature anticipated delay in the approval process is demonstrated by the statute's provision for multiple extensions of deadlines. See former RCW 57.16.010 (1996). Delay in implementing new charges, however, would hinder the District's efforts to secure financing for planned projects.
Based on the plain language of the statute, its purpose, and the requirement of a liberal construction, we hold the District's authority to pass and implement new connection *1027 charges depends only upon adoption of the comprehensive plan and is not conditioned upon county approval of the plan.[5] The connection charges are valid because they are based on an amended plan adopted by the District's board of commissioners; the service rates are valid upon passage.
2) Applicability of Title 80 RCW and the Consumer Protection Act
Silver Firs next argues the District is subject to regulation of the Washington Utilities and Transportation Commission (WUTC) under Title 80 RCW because it is a "water company." In the alternative, Silver Firs argues the District is subject to the Consumer Protection Act (CPA). Neither argument has merit.
Under Title 80, the WUTC is authorized to [r]egulate in the public interest ... the rates, services, facilities, and practices of all persons engaging within this state in the business of supplying any utility service or commodity to the public for compensation, and related activities, including but not limited to ... water companies.
RCW 80.01.040. "Person" includes an individual, a firm or partnership. RCW 80.04.010. A water company specifically
includes every corporation, company, association, joint stock association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever, and every city or town owning, controlling, operating, or managing any water system for hire within this state: PROVIDED, That for purposes of commission jurisdiction it shall not include any water system serving less than one hundred customers where the average annual gross revenue per customer does not exceed three hundred dollars per year, which revenue figure may be increased annually by the commission by rule adopted pursuant to chapter 34.05 to reflect the rate of inflation as determined by the implicit price deflator of the United States department of commerce.
RCW 80.04.010. "Corporation" includes a corporation, company, association, or joint stock association. RCW 80.04.010.
A WUTC regulation, effective December 31, 1999, provides that "[t]he commission only regulates investor-owned water companies," and "[t]he commission does not regulate... (c) Water districts ." WAC 480-110-255.
"Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature under the maxim expressio unius est exclusio alteriusspecific inclusions exclude implication." Washington Natural Gas Co. v. Public Util. Dist. No. 1, 77 Wash.2d 94, 98, 459 P.2d 633 (1969). The statute defining "water company" makes no mention of municipal corporations. The District is a municipal corporation, not a "water company," and is not subject to the WUTC's jurisdiction.
Silver Firs also argues the District is subject to Title 80 RCW as a public service corporation because the District acknowledges that it renders services to the general public. This argument is just another version of the water company argument; under Title 80, a public service company "includes every gas company, electrical company, telecommunications company, and water company." RCW 80.04.010. The District is not a water company, and therefore it is not a public service company.[6]
In the alternative to their Title 80 RCW argument, Silver Firs argues the District *1028 is subject to the CPA because otherwise the District "would essentially be free from any scrutiny for rate abuses." But the Supreme Court has rejected this argument. See Washington Natural Gas Co., 77 Wash.2d at 98, 459 P.2d 633 ("Nowhere does its [CPA's] language imply that municipal corporations or political subdivisions of the state are within the definition of persons and entities made subject to it."). See also Ottgen v. Clover Park Tech. College, 84 Wash. App. 214, 221, 928 P.2d 1119 (1996) ("Nowhere in the CPA does it say that municipal corporations or political subdivisions of the state are subject to the CPA.").
Silver Firs attempts to distinguish Washington Natural Gas because RCW 80.04.010 specifically references the CPA: "[W]ater companies exempt from commission regulation shall be subject to the provisions of chapter 19.86 RCW." RCW 80.04.010. But as just discussed, that provision does not apply because the District is not a Title 80 water company.
In sum, by the plain terms of the statute and controlling case law, neither Title 80 RCW nor the Consumer Protection Act applies to the District as a municipal corporation.
3) Applicability of Title 57 RCW Notice Provisions
Silver Firs argues that the District is required to provide notice of proposed rate changes and consideration of amendments to the comprehensive plan, and that its failure to do so invalidates both. Silver Firs' arguments have no merit.
Silver Firs acknowledges that former Title 57 contains no public notice requirements. But Silver Firs argues that because water districts have both the power to fix water service rates and the power of condemnation, and must condemn "in the same manner and by the same procedures as provided for cities and towns," former RCW 57.08.010(1)(c) (1996), it follows that the notice requirements for condemnation proceedings must be followed before water districts change their water service rates.
Silver Firs is correct that water districts are authorized to fix rates for water, sewer, and drain services, and to acquire by purchase or condemnation land and water, among other powers. Former RCW 57.08.010 (1996). Silver Firs is also correct that former Title 57 RCW contains no public notice requirement for rate changes, but when exercising their power of eminent domain, water districts shall do so "in the same manner and by the same procedures as provided for cities and towns." Former RCW 57.08.010(1)(c) (1996). Cities and towns must pass an ordinance and file a petition in the county superior court where the land is located.[7] RCW 8.12.040; 8.12.050. But these notice requirements have nothing to do with the District's actions here.
Silver Firs relies on Port of Edmonds v. Northwest Fur Breeders Co-op., Inc., 63 Wash.App. 159, 816 P.2d 1268 (1991), in which the court considered a similar statutory scheme. The port was required by statute to exercise its power of eminent domain in the same manner and by the same procedure as provided for cities of the first class. Port of Edmonds, 63 Wash.App. at 165-66, 816 P.2d 1268 (citing RCW 53.08.010). The court noted that before passing an ordinance, first class cities must give notice containing the preliminary meeting agenda. Port of Edmonds, 63 Wash.App. at 165-66, 816 P.2d 1268 (citing RCW 35.22.288). The court concluded that when the port district makes "a legislative decision to initiate eminent domain proceedings, RCW 53.08.010 requires a port district to give prior notice as required in RCW 35.22.288." Port of Edmonds, 63 Wash.App. at 166, 816 P.2d 1268.
From this reasoning, Silver Firs argues that because former RCW 57.08.010 requires water districts to follow the eminent domain procedure for cities and towns, which includes an ordinance adopted after prior notice, this court should require prior notice for a different power of the water district *1029 rate settingbecause it requires passage of a resolution. But the provision authorizing water districts to set rates makes no comparable reference to the procedures of cities and towns, and we infer none. See Lacey Nursing Ctr., Inc. v. Department of Rev., 128 Wash.2d 40, 53, 905 P.2d 338 (1995).
Silver Firs also argues the District should have complied with notice requirements for first class cities set forth in RCW 35.22.288. The statute, which applies to public agencies (including cities) and the District, requires first class cities to establish a procedure for notifying the public of upcoming hearings and preliminary agendas, and to promptly publish texts or summaries of adopted ordinances. Cities and the District are also subject to the Open Public Meetings Act (OPMA), 42.30 RCW, under which resolutions are to be adopted at regularly-scheduled meetings open to the public or at open meetings for which notice is published in the state register at least 20 days before the rescheduled meeting date. RCW 42.30.060(1), 42.30.075. Actions taken at meetings not in compliance with this rule are null and void. RCW 42.30.060(1).
Silver Firs argues that under this statutory scheme, the District should be subject to the same notice rule as first class cities. For this proposition, Silver Firs relies on State v. Walls, 81 Wash.2d 618, 622, 503 P.2d 1068 (1972), presumably for the rule that, "where a general statute and a subsequent special law relate to the same subject, the provisions of the special statute must prevail." Walls, 81 Wash.2d at 622, 503 P.2d 1068. But the principle set forth in Walls has no application here. The notice requirements of RCW 35.22.288 apply specifically to first class cities, while the OPMA provides notice requirements for regular and special meetings for public agencies generally. For first class cities, the later, special statute prevails. But the water district is not a first class city, and for water districts, there is no later special statute.
Under the plain language of Title 57 RCW, water districts are not required to provide notice of regularly-scheduled meetings. As required by RCW 42.30.060, the District adopted its resolutions at an open, regularly-scheduled meeting.
4) Procedural Due Process and the Open Public Meetings Act
Silver Firs also argues that, regardless of statutory notice requirements, the District's failure to provide notice violated procedural due process. Silver Firs thus implicitly argues that the OPMA notice requirements are constitutionally inadequate.
A statute is presumed constitutional. Washington Fed'n of State Employees v. State, 127 Wash.2d 544, 558, 901 P.2d 1028 (1995). To overcome that presumption, a party must prove the statute is unconstitutional beyond a reasonable doubt. Washington Fed'n, 127 Wash.2d at 558, 901 P.2d 1028.
The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Washington Constitution contains an almost identical clause. Wash. Const., art. I, § 3 ("No person shall be deprived of life, liberty, or property, without due process of law."). At minimum, procedural due process requires notice and an opportunity to be heard. Rivett v. City of Tacoma, 123 Wash.2d 573, 583, 870 P.2d 299 (1994). "`Generally, in looking at the degree of process that will be afforded in a particular case, the court balances the following interests: (1) the private interest to be protected; (2) the risk of erroneous deprivation of that interest by the government's procedures; and (3) the government's interest in maintaining the procedures.'" Rivett, 123 Wash.2d at 583, 870 P.2d 299 (quoting Watson v. Washington Preferred Life Ins. Co., 81 Wash.2d 403, 408, 502 P.2d 1016 (1972)). For due process protections to be implicated, there must be an individual interest asserted that is encompassed within the protection of life, liberty, or property. Washington Fed'n, 127 Wash.2d at 558, 901 P.2d 1028.
Without citation to authority, Silver Firs asserts they have a "substantial property interest to be protected in the face of District actions." Silver Firs' failure to clearly and persuasively identify the interest allegedly protected by due process guaranties is fatal to such a claim. See Washington Fed'n, 127 *1030 Wash.2d at 560, 901 P.2d 1028 (holding failure to clearly establish a liberty interest protected by due process guaranties is insufficient to overcome presumption that RCW 29.79.060 is constitutional).
In any event, a builder does not have a vested right in fees charged by a water district, absent a valid contract. Lincoln Shiloh Assoc., Ltd. v. Mukilteo Water Dist., 45 Wash.App. 123, 128, 724 P.2d 1083 (1986) ("Unless by valid contract, a municipal corporation should not be bound to a fee schedule for actions to be performed at a future time.").
The contract between Silver Firs and the District provided that Silver Firs would pay the rates in effect at the time of application for service. Thus, under Lincoln Shiloh, Silver Firs' "property interest" in the rates was not vested, because Silver Firs was to pay for services at the rates in effect on the date of each application for service. The rates in effect in April were the new rates, unless an applicant held a building permit. Under the contract, Silver Firs was responsible for procuring all necessary permits. Silver Firs has thus failed to identify any protected property interest or contract right.
Finally, the District gave public notice of the hearing at which the rate increases were adopted. The District's procedures did not violate Silver Firs' due process rights.[8]
5) Attorney's Fees
The District requests attorney's fees under RAP 18.9, which authorizes this court to order sanctions for a frivolous appeal. While we reject Silver Firs' arguments, its appeal cannot be described as presenting no debatable issues, and we therefore deny the request for fees. See Schumacher v. Watson, 100 Wash.App. 208, 217, 997 P.2d 399 (2000).
Affirmed.
WEBSTER, J., and APPELWICK, J., concur.
NOTES
[1] At the time of the District's actions, water districts and sewer districts were governed by Title 57 RCW and Title 56 RCW, respectively. The relevant provisions of those titles were substantially similar. In 1997, these districts were combined into single water-sewer districts, effective July 1, 1997, governed by Title 57 RCW. Laws of 1996, ch. 230. In 1999, the legislature substantially amended Title 57. See Laws of 1999, ch. 153.
[2] That statute provides in relevant part:

The water district commissioners before ordering any improvements hereunder or submitting to vote any proposition for incurring any indebtedness shall adopt a general comprehensive plan of water supply for the district....
The general comprehensive plan shall be adopted by resolution and submitted to an engineer designated by the legislative authority of the county in which fifty-one percent or more of the area of the district is located, and to the director of health of the county in which the district or any portion thereof is located, and must be approved in writing by the engineer and director of health ....
Before becoming effective, the general comprehensive plan shall also be submitted to, and approved by resolution of, the legislative authority of every county within whose boundaries all or a portion of the district lies. The general comprehensive plan shall be approved, conditionally approved, or rejected by each of the county legislative authorities pursuant to the criteria in RCW 57.02.040 for approving the formation, reorganization, annexation, consolidation, or merger of water districts, and the resolution, ordinance, or motion of the legislative body which rejects the comprehensive plan or a part thereof shall specifically state in what particular the comprehensive plan or part thereof rejected fails to meet these criteria.... Each general comprehensive plan shall be deemed approved if the county legislative authority fails to reject or conditionally approve the plan within ninety days of the plan's submission to the county legislative authority or within thirty days of a hearing on the plan when the hearing is held within ninety days of submission to the county legislative authority....
Former RCW 57.16.010 (1996) (emphasis added).
[3] County approval is to be based on whether the proposed action complies with the development program outlined in the county comprehensive plan, the basinwide water and/or sewage plan; and the policies expressed in the county plan for water and or sewage facilities. Former RCW 57.02.040 (1996). This section was amended, effective July 1, 1997. See Laws of 1996, ch. 230, § 105.
[4] The preamble to a statute can be crucial for interpreting a statute. Spokane County Health Dist. v. Brockett, 120 Wash.2d 140, 151, 839 P.2d 324 (1992). The preamble can "serve as an important guide in determining the intended effect of the operative sections [of the statute]." Hearst Corp. v. Hoppe, 90 Wash.2d 123, 128, 580 P.2d 246 (1978).
[5] For the same reason, we reject Silver Firs' argument that when the District passed the rate and charge increase, State Department of Health approval was a condition precedent to their validity.
[6] Silver Firs relies on inapposite case law. See West Valley Land Co. v. Nob Hill Water Ass'n, 107 Wash.2d 359, 366-68, 729 P.2d 42 (1986) (rejecting literal application of "public service company" definition to private entitiesnot as applied to municipal corporations); State ex rel. West Side Improvement Club v. Department of Public Serv., 186 Wash. 378, 58 P.2d 350 (1936) (considering whether a statute permitting cities to set water rates outside the city implicitly repealed a statute granting the public service commission authority to set water rates outside the city).
[7] Generally, cities and towns are required to establish a procedure for notifying the public of upcoming hearings and the preliminary agendas, and to promptly publish texts or summaries of ordinances adopted. RCW 35.22.288 (first class cities), 35.23.221 (second class cities), 35.27.300 (towns), 35.30.018 (unclassified).
[8] In light of our disposition, we do not address Silver Firs' 42 U.S.C. § 1983 argument.