NELSON, J.[2]
Appeal to determine whether provisions of the Domestic Violence Code violate provisions of ICRA and CTCRA by imposing enhanced sentencing and requiring the defendant to prove self defense by a preponderance of the evidence. We affirm in part and reverse in part.

PROCEDURAL HISTORY

On June 3, 2004, the Business Council of the Confederated Tribes of the Colville Reservation (hereinafter CBC) amended the Domestic Violence Code, CTC 5-5 et seq., to enhance sentencing for crimes involving domestic violence. The CBC also added a provision that, should self-defense be claimed, the defendant has the burden of proving self-defense by a preponderance of the evidence, rather than the prosecution having to prove the absence of self-defense by proof beyond a reasonable doubt.
The appellants are numerous defendants charged with crimes involving domestic violence who contend their rights were violated under the Indian Civil Rights Act, 25 USC 1302, (hereinafter ICRA) and the Colville Tribal Civil Rights Act, CTC 1-5 (hereinafter CTCRA) by the enhanced sentencing requirements. Appellants also contend that requiring a defendant to prove self-defense by a preponderance of the evidence for crimes involving domestic violence violates ICRA and CTCRA in that the tribal prosecutor should have the burden to prove a lack of self-defense beyond a reasonable doubt. They make these arguments on the basis of the trial court’s interlocutory order denying defendant’s motion to accept proposed jury instructions which supported their position.
Grounds for an interlocutory appeal may be found where “the issue presented involve a controlling issue of law as to which there is substantial ground for difference of opinion and that an intermediate appeal from the decision may materially advance the ultimate termination of the outcome:” COACR 7-A(b). This appeal meets the criteria for review.

JURISDICTION

This court has personal and subject matter jurisdiction of these cases pursuant to the Constitution of the Colville Confederated Tribes[3] and the Colville Tribal Code[4]. *407 Also see Colville Confederated Tribes v. Stockwest, CV86-624, 21 ILR 6075 (1984) and National Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845, 12 ILR 1035 (1985). The defendants are Native American and the criminal acts alleged herein took place within the exterior boundaries of the Reservation.

STANDARD OF REVIEW

The material facts of these cases are not disputed for the purpose of this appeal. The issues are entirely those of law. Accordingly, the standard of review' is de novo. CCT v. Naff, 2 CCAR 50, 2 CTCR 08, 22 ILR 6032 (1995), Wiley et al. v. CCT, 2 CCAR 60, 2 CTCR 09, 22 ILR 6059 (1995).

STATEMENT OF RELEVANT FACTS

The cases before us are similar only in that they involved alleged crimes involving domestic violence. They do, however, present identical issues of law for this court to determine. In order to put the issues in perspective and for purposes of illustration, we set forth the facts alleged in Davisson.
Connie Davisson was charged with willfully striking or otherwise inflicting bodily injury by scratching her former boyfriend on his nose and cheek on October 25, 2004. (Battery) CTC 3-1-4. She is also charged in a separate count of biting him on his chest at the same date and time. (Battery) CTC 3-1-4. She is further charged with entering or remaining in a building without permission with the purpose of committing the above referenced crimes. (Burglary) CTC 3-1-41. And finally, she is charged with possessing a controlled substance. (Prohibited Aets-Possession) CTC 3-1-180.
The first three counts are alleged crimes involving domestic violence. Domestic Violence is defined as ,. the occurrence of one or more of the following acts by a family or household but does not include acts of self-defense or culturally appropriate discipline of a child.” CTC 5-5-3(d). These include acts “Attempting to cause or causing physical, mental, or emotional harm to another family or household member” CTC 5—5—3(1) and acts “Attempting to commit or committing any criminal offense under Colville Tribal law against another family or household member.” CTC 5-5-3(4). A household member includes “persons who are dating or have dated.” CTC 5-5-3(g)(3). It is alleged that Connie Davisson assaulted her former boyfriend.
The complaint charging Ms. Davisson with these erimes noted on its face that the battery and burglary counts wore subject to enhanced penalties. The complaint labeled the crimes as “Domestic Violence Battery” and “Domestic Violence Burglary.”
The prosecution of Ms. Davisson was without complication until the parties submitted proposed jury instructions. The prosecution/appellee’s proposed jury instructions were standard instructions for the crimes of battery and burglary. Additional instructions directed the jurors to determine: 1) whether the defendant committed a crime beyond a reasonable doubt involving domestic violence, and 2) whether, by a preponderance of the evidence, the acts of committing the erime were made by another family or household member. Proposed instructions were also included that provided for the defendant to prove such by a preponderance of the evidence.
The defendant/appellants’s proposed jury instructions took a different track. Their proposed instructions contend the amendments to the Domestic Violence Code resulted in the establishment of the new crimes of Domestic Violence Battery and Domestic Violence Burglary. They *408 also included instructions requiring the prosecution to disprove self defense beyond a reasonable doubt for all criminal offenses charged. The Trial Court rejected this view and denied the motion to accept the proposed instructions.
The defendants/appellants filed this appeal.

ISSUES

1. Whether the Due Process and Equal Protection rights given criminal defendants under ICRA and the Tribal Civil Rights Act are violated by the provisions of the Domestic Violence Act that require those claiming self-defense to establish it by a preponderance of the evidence;
2. Whether the Due Process and Equal Protection rights given criminal defendants under ICRA and the Tribal Civil Rights Act are violated by the provisions of the Domestic Violence Code that allows the prosecution to establish that a crime is a crime of domestic violence by a preponderance of the evidence rather than by evidence beyond a reasonable doubt; and
3. Whether the provisions of the Domestic Violence Code that require those criminal defendants claiming self-defense to establish it by a preponderance of the evidence violate the rights given them under ICRA and the Tribal Civil Rights Act to not be compelled to testify against themselves?

DUE PROCESS AND EQUAL PROTECTION

The Colville Confederated Tribes enacted the Civil Rights Act (CTCRA) of the Confederated Tribes of the Colville Reservation which provides that the Tribes shall not “(d)eny any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.” CTC 5—2(h). This court has consistently held the CTCRA requires that every defendant in a criminal proceeding is entitled to basic rights including the protections of due process and equal protection of the law. This has always required, at a minimum, proper notice to the defendant and an opportunity for a fair hearing before an impartial decision maker. Lezard v. CCT, 3 CCAR 04, 2 CTCR 11, 22 ILR 6135 (1995), Louie v. CCT, 2 CCAR 47, 2 CTCR 05, 21 ILR 6136 (1994), St. Peter v. CCT, 2 CCAR 02, 1 CTCR 75, 20 ILR 6108 (1993), Wiley v. CCT, 2 CCAR 60, 2 CTCR 09, 22 ILR 6059 (1994). Colville tribal law, with respect to due process and equal protection, rights of criminal defendants, has always been protective as, if not more protective, than the federal Indian Civil Rights Act and thus any rulings by this court necessarily meet any federal law and federal constitution requirements.
A review of the basic tenets of due process and equal protection of laws may be helpful before examining the issues here.
Due Process of Law. There are two facets to due process of law: procedural due process and substantive due process.
Procedural due process of law. Procedural due process requires at a minimum notice and an opportunity to be heard. Silver Firs Town Homes, Inc. v. Silver Lake Water Dist., 103 Wash.App. 411, 425, 12 P.3d 1022 (2000), review denied, 143 Wash.2d 1013, 21 P.3d 292 (2001). Nothing in the record before us shows the appellants were denied procedural due process at trial.
Substantive due -process of law. Substantive due process protects against arbitrary and capricious government action even when the decision to take action is pursuant to constitutionally adequate procedures. Halverson v. Skagit County, *409 42 F.3d 1257, 1261 (9th Cir.1994). The appellants claim that shifting the burdens of proof and persuasion from the prosecution to the defendants for crimes involving domestic violence violates their right to substantive due process.
When state action does not affect a fundamental right, the proper standard of review is whether a rational basis exists for that action. John E. Nowak and Ronald D. Rotunda, Constitutional Law § 11.4, at 370; § 14.4, at 601 (4th Ed. 1991); Washington v. Glucksberg, 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). Under this test, the challenged law must be rationally related to a legitimate state interest. Id.; Seeley v. Stale, 132 Wash.2d 776, 795, 940 P.2d 604 (1997); In re Pers. Restraint of Metcalf, 92 Wash.App. 165, 963 P.2d 911 (1998), cert. denied, 527 U.S. 1041, 119 S.Ct. 2405, 144 L.Ed.2d 803 (1999). In determining whether a rational relationship exists, a court may assume the existence of any necessary state of facts which it can reasonably conceive in determining whether a rational relationship exists between the challenged law and a legitimate state interest. Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); see Seeley, 132 Wash.2d at 795, 940 P.2d 604; Glucksberg, 521 U.S. 702, 117 S.Ct. 2258. (Taken generally from Amunrud v. Bd. of Appeals, 158 Wash.2d 208, 219, 143 P.3d 571 (2006)).
Rational basis review applies where there are no factors triggering more intensive scrutiny. State v. Manussier, 129 Wash.2d 652, 673, 921 P.2d 473 (1996), cert. denied, 520 U.S. 1201, 117 S.Ct. 1563, 137 L.Ed.2d 709 (1997). State v. Wallace, 86 Wash.App. 546, 937 P.2d 200 (1997).
Intermediate scrutiny is applied to a statute that creates a classification based on a semi-suspect class, where an important right is involved. Heiskell, 129 Wash.2d at 123, 916 P.2d 366. An example is where the right to liberty is implicated and the classification is based on poverty. State v. Heiskell, 129 Wash.2d 113, 916 P.2d 366 (1996).
State interference with a fundamental right is subject to strict scrutiny. In re Parentage of C.A.M.A., 154 Wash.2d 52, 57, 109 P.3d 405 (2005).
Strict scrutiny applies to a statute that creates an inherently suspect classification. Inherently suspect classifications are those based on race, national origin, or alienage. Petersen v. State, 100 Wash.2d 421, 444, 671 P.2d 230 (1983). None of the parties have identified an inherently suspect classification in this matter, however, strict scrutiny is also applied where a party is threatened with deprivation of a fundamental right.
The right to not be compelled to testify against oneself is a fundamental right. Thus we review the due process challenge to the amendments to the Domestic Violence Code under the strict scrutiny standard.

Equal Protection

Equal protection of the law is denied when state officials enforce the law7 with an “unequal hand or evil eye.” Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Mere selectivity in prosecution creates no constitutional problems; a defendant must show deliberate or purposeful discrimination based on an unjustifiable standard such as race, religion, or other arbitrary classification. United States v. Steele, 461 F.2d 1148 (9th Cir.1972); Yakima v. Johnson, 16 Wash.App. 143, 553 P.2d 1104 (1976).
For purposes of an equal protection analysis, if the legislature creates a classification based on certain characteris *410 tics of an offender, we determine whether the appropriate standard of review is strict scrutiny, intermediate scrutiny, or the rational basis test, depending on the nature of the interest affected by the law and the characteristics of the legislatively created class. State v. Shawn P., 122 Wash.2d 553, 560, 859 P.2d 1220 (1993).
Under the rational relationship test, the law is subjected to minimal scrutiny and will be upheld “unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective.” State v. Smith, 117 Wash.2d 263, 277, 814 P.2d 652 (1991) (quoting State v. Phelan, 100 Wash.2d 508, 512, 671 P.2d 1212 (1983)). Under the strict scrutiny test, the law will be upheld only if it is shown to be necessary to accomplish a compelling state interest in order to be upheld. Smith, 117 Wash.2d at 277, 814 P.2d 652 (citing State v. Schaaf, 109 Wash.2d 1, 17, 743 P.2d 240 (1987)); Phelan, 100 Wash.2d at 512, 671 P.2d 1212. Under the intermediate or heightened scrutiny test, the challenged law must be seen as furthering a substantial interest of the State. Smith, 117 Wash.2d at 277, 814 P.2d 652 (citing Schaaf, 109 Wash.2d at 17, 743 P.2d 240; Phelan, 100 Wash.2d at 512, 671 P.2d 1212).
Success under any of the articulated tests requires that the appellants first establish a challenged classification. State v. Osman, 126 Wash.App. 575, 108 P.3d 1287 (2005). The appellants have identified only one fundamental right in their Opening Brief and that is the right of a defendant not to be compelled to testify against himself. See Pg. 9. In their Reply Brief, the appellants augment that claim by contending a legal process is flawed which requires defendants in crimes involving domestic violence to prove such by a preponderance of the evidence while defendants claiming self defense in crimes NOT involving domestic violence are relieved of that burden.
Again, the right to not be compelled to testify against oneself is a fundamental right. We review the equal protection challenge to the amendments to the Domestic Violence Code under the strict scrutiny standard.

DISCUSSION OF ISSUES

All three issues center around self-defense. We re-phrase the issues as follows:
Can the CBC shift the burden of proving self defense from the prosecution to the defendant without violating tribal and United States statutes guaranteeing the right to due process and equal protection?
If so, can the CBC change the burden of persuasion in criminal cases involving domestic violence from “beyond a reasonable doubt” when self defense is required to be proven by the prosecution to “by a preponderance of the evidence” when the burden shifts to a defendant?
And, finally, whether shifting the burden of proving self defense to the defendant in crimes involving domestic violence compels the defendant to testify against himself in violation of tribal law?

1. Can the CBC shift the burden of proving self defense from the prosecution to the defendant without violating tribal and United, States statutes guaranteeing the right to due process and equal protection?

Self defense is not specifically defined in either Colville tribal law or Col-ville common law[5], but it is the law that *411 “self-defense justifies an act done in reasonable belief of immediate danger and if an injury was done in justifiable self-defense he can never be punished criminally.” Louie v. CCT, 2 CCAR 47, 2 CTCR 05, 21 ILR 6136 (1994). This interpretation was sanctioned in the legislative history of the Domestic and Family Violence Code in the section entitled “self defense provisions.” This court has applied the state and federal common law rule that once the defendant has presented evidence of self-defense, the absence of self-defense must be proven beyond a reasonable doubt by the prosecution. To be sure, the defendant must present some evidence to raise the issue of self-defense under this analysis. Louie, supra. This does not answer the question of whether the legislature can establish different rules on self defense which more directly is the question in this case.
Most of the laws enacted by the CBC have been passed without a legislative history attached. The CBC deemed amendments to the Domestic Violence Code of such importance that it included a legislative history. The history sets forth the need for the legislation and the intent of the CBC in dealing with the pervasive problem of domestic violence. The Code itself identifies the seriousness of the threat of domestic violence to the Tribes, its families, and that it affects the health, welfare, and political integrity of all Reservation residents. The section of the history concerning shifting the burden of proof and burden of persuasion from the prosecution to the defendant is set forth below in its entirety:
Legislative History:
Self-defense Provision:
In giving direction for the drafting of this chapter, the Colville Business Council made the deliberate choice to favor prosecution of crimes involving domestic violence. This choice was intended as a clear statement that this harmful behavior is not to be condoned nor tolerated and rather, shall receive a strong and certain response by the Tribes’ law enforcement and justice system.
Consistent with its decision to favor prosecution, when considering claims of self-defense, the CBC carefully examined existing Colville Tribal case law and decided that a departure from prior precedent was warranted in cases involving domestic violence. The self-defense provision in this chapter has been discussed at great length within the Tribes’ law enforcement and justice community as well as with the community as a whole at the 2003 Juvenile Task Force Workshop in Keller. With due deliberation and care, the CBC has decided to place the burden of proving self-defense on the defendant accused of a crime involving domestic violence. The fact that this may be contrary to other jurisdictions’ allocation of the burden has been weighed in the deliberations.
At the time this chapter was drafted, Colville case law placed the burden on the Tribes (the prosecutor) to prove the absence of self-defense beyond a reasonable doubt once the defendant introduced evidence in support of self-defense. Under this chapter, the burden never shifts from defendant to prosecutor. In cases where the defendant is accused of a crime involving domestic violence and self-defense is claimed, the defendant has the burden of proving by a preponderance of the evidence that he or she was acting in self-defense. To protect against unjust results, the evidentiary threshold was lowered from beyond a reasonable doubt to a preponderance of the *412 evidence. It should be noted that the underlying principle remains the same as always: “The law of self-defense justifies an act done in the reasonable belief of immediate danger, and if an injury was done by a defendant in justifiable self-defense, he can never be punished criminally ... Louie v. Colville Confederated Tribes, 2 CCAR 47, 2 CTCR 05, 21 ILR 6136 (1994). As in all cases, there are valid concerns that a defendant may be wrongly accused. However, the rule of evidence in Tribal Court should allow all defendants to present all relevant evidence available in support of self-defense. Evidence of past violence by the alleged victim would clearly be admissible to support a claim of self-defense.
That a defendant may choose to testily in support of the claim of self-defense does not amount to compelling the defendant to testify against himself or herself. Such testimony is not testimony against the defendant, nor would any testimony elicited in cross examination necessarily be.”
The legislative history sets forth compelling reasons for enhancing sentencing and shifting the burden of proving self-defense from the prosecution to the defense for crimes involving domestic violence. The amendments satisfy the strict scrutiny test.
There is no tribal case law that considers whether placing the burden of proof on a defendant violates tribal or federal statutes. Accordingly, we look to other jurisdictions, state and federal, for guidance. See CTC 1-2-11.
The State of Washington has considered whether shifting the burden of proof is unconstitutional. One court stated:
“It is not a constitutional imperative that a state “must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society’s interests against those of the accused have been left to the legislative branch.... Proof of the nonexistence of all affirmative defenses has never been constitutionally required ... Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The state legislatures may define crimes so as to place the burden of proving a defense upon defendant. As noted in Patterson, “The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. 432 U.S. at 203 n. 9 [97 S.Ct. 2319], quoting Morrison v. California, 291 U.S. 82, 88-89, 54 S.Ct. 281, 78 L.Ed. 664 (1934).” State v. McCullum, 98 Wash.2d 484, 656 P.2d 1064 (1983).
Another Washington State Supreme Court case that reviewed whether it is constitutionally permitted to shift the burden of proof and persuasion from the prosecution to the defendant is State v. Camara, 113 Wash.2d 631, 781 P.2d 483 (1989). That court held a defendant’s right to due process was not violated when the legislature shifted the burden of proof of the affirmative defense of consent in a case involving sexual assault from the prosecution to him.
A leading federal case regarding shifting of the burdens of proof and persuasion is Patterson v. New York, 432 U.S. 197, 201-202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), That court noted that:
“(A)mong other things, it is normally “within the power of the State to regulate procedures under which its laws are *413 carried out, including the burden of producing evidence and the burden of persuasion’ and its decision in this regard is not subject to proscription under the Due Process Clause unless ‘it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental” Patterson at 201-202, 97 S.Ct. 2319 quoting Speiser v. Randall, 357 U.S. 513, 523, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958), et al.
We see no difference in the issues in Patterson, supra, and Camara. We find the reasoning of both courts persuasive.
The amendments to the domestic violence act offend no principle of justice that are so rooted in the traditions and conscience of our people as to fundamentally deny due process to a defendant in a case involving domestic violence.
We hold the CBC has not violated tribal or federal statutes guaranteeing the right to due process and equal protection by shifting the burden of proving self defense from the prosecution to the defendant for crimes involving domestic violence.
2. Can the CBC change the burden of persuasion in criminal cases involving domestic violence from “beyond a reasonable doubt” when self defense is required to be proven by the prosecution to “by a preponderance of the evidence” when the burden shifts to a defendant?
Appellants contend that the sentencing enhancement provisions of the Domestic Violence Code unlawfully subject them to sentences exceeding the maximum for Class B and Class C offenses.[6] They argue that this factor, if proved by a preponderance of the evidence, wrongfully increases the maximum penalty for the underlying charge. They contend it is wrongful because due process of law requires that proof that the crime is one of domestic violence must be beyond a reasonable doubt rather than a preponderance of the evidence for those charged with Class B and C offenses. They further contend that the determination that the crime is one involving domestic violence necessarily transforms the crime from either a Class C offense to a Class B offense or a Class B offense to a Class A offense. Accordingly, the determination that the crime is one of domestic violence is necessarily an element of the crime and must be proved beyond a reasonable doubt. We agree.
The concept of sentencing enhancement and its ramifications was thoroughly discussed in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). After an extensive review of a history of judicial sentencing, that court concluded:
“Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse *414 the statement of the rule set forth in the concurring opinions in that case: “[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.” 526 U.S., at 252-253 [119 S.Ct. 1215] (opinion of Stevens, J.); see also id., at 253 [119 S.Ct. 1215] (opinion of Scalia, J.).*fn16.” Apprendi at 466, 120 S.Ct. 2348.
A determination by the jury that the crime is one of domestic violence transforms the crime from either a Class C to a Class B offense or from a Class B to a Class A offense. It does this by increasing the sentence beyond the maximum for the underlying offense. Therefore, whether the crime is one of domestic violence now becomes an element of the offense should its proof enhance the crime to a higher class. All elements of a crime must be proven beyond a reasonable doubt. United States v. Gaudin, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); see also Sullivan v. Louisiana, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Due process of law requires that in instances of those charged with Class B and Class C offenses involving domestic violence proof of such must be beyond a reasonable doubt.
The foregoing applies only to defendants charged with Class B and Class C offenses involving domestic violence. The amendments enhancing sentencing for the Domestic Violence Code do not apply to Class A offenses because the maximum sentence is not increased beyond that for other Class A offenses. Accordingly, the present standard of proof for establishing self defense for the crime of domestic violence for Class A offenses remains by a preponderance of the evidence to be proven by the defendant.
We hold that shifting the burden of persuasion to the defendant and the burden of proof to a preponderance of the evidence for Class A criminal offenses involving domestic violence does not violate either the CTCRA or the ICRA.
We also hold that the present scheme of shifting the burden of proof and persuasion to the defendant for Class B and C offenses involving domestic violence does violate the provisions of the CTCRA and ICRA. Accordingly, the prosecution must prove beyond a reasonable doubt that self-defense does not exist for defendants charged with such crimes and that the crime is one of domestic violence.

3. Whether shifting the burden of proving self defense to the defendant in crimes involving domestic violence compels the defendant to testify against himself in violation of tribal law.

To claim self-defense is a choice made by the defendant. Should he claim self-defense in a Class A offense involving domestic violence, he is obligated to prove it by a preponderance of the evidence. He may prove self-defense through the testimony of witnesses or himself or both. It is his decision whether to testify. He may incriminate himself should he choose to do so, but it is his decision whether to testify. He cannot be compelled to testify, but by voluntarily putting himself on the witness stand, he has made moot his right not to be compelled to testify against himself. As was stated in a recent Washington State court: “The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf and not for those who do.” State v. Burke, 163 Wash.2d 204, 211, 181 P.3d 1 (2008).
The United States Supreme court preceded Burke when it stated that a defen *415 dant faces a dilemma demanding a choice between “complete silence and presenting a defense” which has “never been thought an invasion of the privilege against compelled self-incrimination.” Williams v. Florida, 399 U.S. 78, 84, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).
We hold that shifting the burden of proving self-defense to the defendant in Class A offenses involving domestic violence does not compel the defendant to testify against himself. By claiming self-defense he has the burden of proving it by a preponderance of the evidence.

CONCLUSION

We affirm the Trial Court’s Order denying the appellants’ motion to accept proposed jury instruction. We reverse the Trial Court’s order approving the appel-lee’s proposed jury instructions to the extent that it accepts those instructions regarding the shifting of the burdens of proof and persuasion from the prosecution to the defendants who claim self-defense for Class B and C offenses involving domestic violence. We remand this matter to the Trial Court to process these cases consistent with this Opinion.

. Appointed Presiding Justice on December 12,2011.

. Amendment X-Judiciary-Article VIII Judiciary—Section 1. There shall be established by the Business Council of the Confederated Tribes of the Colville Reservation, a separate branch of government consisting of the Col-ville Tribal Court of Appeals, the Colville Tribal Court, and such additional courts as the Business Council may determine appropriate. It shall be the duty of all courts established under this section to interpret and enforce the laws of the Confederated Tribes of the Colville Reservation as adopted by the governing body of the Tribes. The Business Council shall determine the scope of the jurisdiction of these courts and the qualifications of the judges of these courts by statute.

.Colville Tribal Code 1-1-70 Jurisdiction defined, The jurisdiction of the Tribal Court and the effective area of this code shall include all territory within the Reservation boundaries, and the lands outside the boundaries of the Reservation held in trust by the United States for Tribal members of the Tribes, and it shall be over all persons therein, provided, however, that criminal jurisdiction of the Court shall not extend to non-Indians.

. We decline to more specifically define self defense as it not necessary to our holding in these consolidated cases.

. LOC 5-5-54 b) If a person commits a crime involving domestic violence, the penalties for the underlying crime shall be increased as provided in subsections (1), (2), and (3) that follow.
(1)If the underlying crime is a Class C offense, the revised maximum fine and sentence shall be that of the next higher Class and in no case shall the sentence be less than forty-five (45) days;
(2) If the underlying crime is a Class B offense, the revised maximum fine and sentence shall be that of the next higher Class and in no case shall the sentence be less than ninety (90) days; or
(3) If the underlying crime is a Class A offense, the sentence shall be no less than one hundred and eighty (180) days.